# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                     **CRIMINAL ACTION**

**VERSUS**

**TROY L. FRAZIER**                              **NO. 09-0029-JJB-RLB**

## R U L I N G

This matter comes before the Court on the motion of the defendant, Troy L. Frazier, to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (R. Doc. 48). The defendant asserts that he was provided with ineffective assistance of counsel prior to and subsequent to his criminal sentencing hearing and was completely denied counsel during the post-sentencing pre-appeal stage of his criminal proceedings. The Government has filed an opposition to the defendant's motion. There is no need for oral argument or for an evidentiary hearing.

On March 12, 2009, a federal grand jury indicted the defendant in a one-count Indictment, charging the defendant with distribution of fifty (50) or more grams of a substance containing a detectable amount of cocaine base, also known as "crack cocaine," a violation of 21 U.S.C. § 841(a)(1). On June 10, 2009, the defendant withdrew his prior plea of not guilty and entered a plea of guilty in connection with the charged offense. As part of the plea agreement, the defendant waived his right to appeal and to seek collateral review (1) except in the event that the Court imposed a sentence in excess of the statutory maximum or departed upward from the applicable sentencing guideline range, and (2) except as to claims of alleged ineffective assistance of counsel,

and the United States agreed that no additional criminal charges would be brought against the defendant arising out of the offenses alleged in the Indictment.

At the defendant's guilty plea colloquy conducted on June 10, 2009, the defendant acknowledged under oath that he had read and discussed both the Indictment and the written Plea Agreement with his attorney and that he had signed his name to the Agreement. The written Plea Agreement set forth the offense to which the defendant was pleading guilty and also explained the penalties that he faced. In addition, the Plea Agreement explicitly stated that "[t]he defendant understands that the Court, while not bound to apply the Sentencing Guidelines, must consult the guidelines and take them into account when sentencing," and further, "that there is no agreement with the United States as to the actual sentence that will be imposed by the Court as a result of this Plea Agreement and ... that no promises or assurances have been made to him as to what the sentence will be." Finally, the Plea Agreement provided that the defendant was entering into the Agreement "knowingly, voluntarily, and with the advice of counsel," and that the defendant fully understood the terms of the Agreement.

Consistent with Rule 11 of the Federal Rules of Criminal Procedure, the trial judge explained the sentence that the defendant faced in connection with the charged offense and the rights that the defendant was relinquishing by pleading guilty. Specifically, the judge informed the defendant that he faced a term of *not less than ten (10) years* and not more than life imprisonment, a potential fine of up to $4,000,000.00, potential restitution to any victims, a mandatory special assessment in the amount of $100.00, and a period of post-custody supervised release of not less than five (5) years. Among the rights that the trial judge explained that the defendant was giving up by pleading guilty were, *inter alia*, the right to a trial before a jury of his peers, to confront and cross-examine the

2

witnesses against him, and to compel the Government to establish his guilt beyond a reasonable doubt. In addition, the Court explained that an applicable sentencing guidelines range would be calculated for the defendant but that the Court was not required to follow the guidelines. The defendant signified in open court that he understood and acquiesced in all that the Court had explained and that he wished to voluntarily plead guilty in accordance with the terms of the Plea Agreement. The defendant further affirmatively stated that he was satisfied with the assistance that had been provided to him by his attorneys and that he had not been forced to plead guilty or induced to do so by any threats or promises.

The factual predicate agreed to by the defendant in his Plea Agreement was then read into the record, reciting that:

> On May 1, 2007, the defendant arranged to meet CS in the parking lot of a business park on Florida Blvd in Baton Rouge, LA for the purpose of selling to him crack cocaine. As agreed, the defendant arrived in the parking lot and parked near CS's vehicle. CS got into the defendant's vehicle and the defendant gave him a zip lock bag containing crack cocaine. CS paid the defendant $2100 for the crack cocaine and exited his vehicle.
>
> The crack cocaine purchased from the defendant was sent to the DEA South Central Laboratory in Texas where it was analyzed and determined to be 83.7 grams of cocaine base.

(R. Doc. 16 at p. 4). The defendant agreed that this factual recitation was accurate and that he was in fact guilty of the offense charged against him.

Finally, the Court accepted the defendant's guilty plea and advised the defendant that the Court would defer sentencing until after the preparation and dissemination of a Presentence Investigation Report ("PSR"), at which time the case would be scheduled for sentencing.

A PSR was prepared and made available to the parties on August 28, 2009 (R. Doc. 17). The PSR calculated the defendant's Criminal History Category to be III and his Base Offense Level to

3

be 16, predicated upon the amount of drugs attributed to him.[1]  A total of three points were deducted from the Base Offense Level because of the defendant's acceptance of responsibility and assistance to the Government.  The PSR ultimately calculated a Total Offense Level for the defendant of 27 which, with a Criminal History Category of III, resulted in a sentencing guideline range of between 87 and 108 months in confinement.  At the sentencing hearing thereafter conducted on July 22, 2010, almost a year later and after the granting of two (2) unopposed motions for continuance, *see* R. Docs. 22 and 25, the defendant, through his attorneys, submitted written objections to the PSR and a Sentencing Memorandum, *see* R. Doc. 27, which the Court accepted in part.  In addition, the Court opined that, whereas the Court may have considered a downward departure in the sentencing range in light of "additional factors" pertinent to the defendant's situation, the statute in effect at the time of sentencing provided that, for offenses involving 28 or more grams of crack cocaine, a mandatory minimum sentence of ten (10) years in confinement was required.  Accordingly, notwithstanding argument by the defendant's attorney that this resulted in an unfair disparity between sentences mandated for crack cocaine and those mandated for equal amounts of powder cocaine, the Court advised the parties that it was constrained by the statute and so imposed the ten-year mandatory minimum sentence.  The Court noted, however, for the record, that "if the mandatory minimum in this matter were not in place," the Court "would have given ... a guideline sentence range between

_____

1. The Court determined, for purposes of sentencing, that the quantity of crack cocaine distributed by the defendant would be considered to be the same as an equivalent quantity of powder cocaine on a one-to-one ratio instead of at the ratio of 100-to-one as provided in the Sentencing Guidelines.  The Government pointed out, however, that there was legislation then pending before Congress which would have required treating the quantity of crack cocaine distributed by the defendant as equivalent to a greater quantity of powder cocaine, evaluated at a ratio of 25-to-one.  Ultimately, the Fair Sentencing Act of 2010 reduced the ratio to eighteen-to-one.

87 and 108 months." *See* R. Doc. 40 at p. 15. The Judgment was signed on July 29, 2010, and entered on July 30, 2010.

On July 28, 2010, six days after the sentencing hearing, the defendant filed a *pro se* Notice of Appeal (R. Doc. 28). On the same date, the United States House of Representatives approved a long-pending piece of federal legislation, the Fair Sentencing Act of 2010 ("FSA"), Pub.L. No. 111-220, 124 Stat. 2372, which amended the penalty section of the Controlled Substances Act, 21 U.S.C. § 841(b), and reduced the ratio for sentencing in connection with offenses involving crack cocaine and powder cocaine from 100-to-1 to 18-to-1, and increased the amount of crack cocaine necessary to trigger a 10-year mandatory sentence from 50 grams to 280 grams. Subsequent to the House's vote, on July 30, 2010, the defendant's trial attorneys filed a Motion to Withdraw as Counsel of Record on the defendant's behalf (R. Doc. 32), which Motion was granted by the Court on August 3, 2010 (R. Doc. 33). Also on August 3, 2010, the President signed the FSA into law. Thus, it appears that during the brief two week period of time after the defendant's sentencing hearing of July 22, 2010, several events of potential significance occurred in connection with his criminal proceedings. Specifically, the FSA, which had been proposed in January, 2010, and had been approved by the Senate in March, 2010, was passed by the House of Representatives on July 28, 2010, on which date the defendant also filed a *pro se* Notice of Appeal; the defendant's Judgment was signed on July 29, 1010, and entered on July 30, 2010; the defendant's attorneys moved to withdraw from representation on July 30, 2010, which motion was granted on August 3, 2010; and on the same date, August 3, 2010, the FSA was signed into law by the President, effectively reducing the mandatory minimum penalty for the offense charged against the defendant from 120 months to 60 months.

On direct appeal, the defendant argued, through appointed counsel, that the provisions of the FSA should be applied to his sentence. Notwithstanding, pursuant to Mandate dated June 17, 2011, the United States Court of Appeals for the Fifth Circuit rejected this argument and affirmed the defendant's conviction and sentence. Specifically, the appellate court concluded:

> In the instant case, there is no question that Congress repealed and replaced § 841(b)(1)(A)(III), by enacting the FSA. However, the FSA is silent on the issue of retroactivity.... Frazier argues that the retroactivity issue has not been addressed in this circuit. Subsequent to the filing of Frazier's brief, this court issued a published opinion holding that the FSA does not apply to defendants who were sentenced prior to its enactment. *See United States v. Doggins*, 633 F.3d 379, 384 (5ᵗʰ Cir. 2011).

*See* R. Doc. 46. Accordingly, inasmuch as the defendant was sentenced before the effective date of the FSA, *i.e.*, before August 3, 2010, the provisions of the FSA were not applicable to him.

On or about September 17, 2012, the defendant filed the instant Motion to Vacate, Set aside or Correct Sentence pursuant to 28 U.S.C. § 2255. In this Motion, the defendant asserts that he was provided with ineffective assistance of counsel because (1) his attorneys failed to move for a continuance prior to the sentencing proceedings to await the passage of the FSA, which statute was anticipated to provide more lenient sentencing provisions for offenses involving crack cocaine, (2) his attorneys failed to file a Rule 35(a) motion to correct the sentence that resulted from clear error after the enactment of the FSA on August 3, 2010, and (3) he was deprived of the right to counsel at a critical stage of the criminal proceedings, *i.e.*, during the 2-day period of time after withdrawal by his trial attorneys during which he still had time to file a motion pursuant to Fed. R. Crim. P. 35(a).

## Legal Analysis

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a criminal defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United States v.*

*Frady*, 456 U.S. 152, 166 (1982).  When a defendant has been convicted, and his appellate rights have been exhausted or waived, there is a presumption that his conviction is fair and final.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  "As a result, review of convictions under § 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."  *Id.*  This procedural bar does not apply, however, to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and are not procedurally barred by a failure to raise them on direct appeal).  As a general rule, a valid guilty plea waives all non-jurisdictional defects, including any ineffective-assistance-of-counsel claims, unless the ineffective-assistance claims affected the voluntariness of the plea.  *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1993).[2]

A habeas defendant who claims ineffective assistance of counsel must affirmatively demonstrate:

(1)     That his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

(2)     That the deficient performance prejudiced his defense, *i.e.*, that counsel"s errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The defendant must make both showings in order to obtain habeas relief based upon alleged ineffective assistance of counsel.  *Id.*

---

2. Although the defendant's plea agreement in this case waived his right to seek collateral review under 28 U.S.C. § 2255, the terms of the waiver provided that the defendant could still pursue claims based upon alleged ineffective assistance of counsel.  *See* Rec. Doc. 16.

To satisfy the deficiency prong of the *Strickland* standard, the defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter, supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh, supra*, 838 F.2d at 773; *Martin v. McCotter, supra*, 796 F.2d at 816.

If the defendant satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the defendant to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington, supra*, 466 U.S. at 693. Rather, the defendant must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter, supra*, 796 F.2d at 816. The habeas defendant need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id.* at 816-17.

The above showing is one that the defendant cannot make in the instant case.

8

The Defendant's Claim Regarding His Attorneys'
Failure To File A Motion For Continuance Is Without Merit

In his first assignment of error, the defendant asserts that his attorneys provided deficient performance by failing to move to continue the sentencing hearing until after the passage of the FSA. He asserts that, had his attorneys done so, had the continuance been granted by the Court, and had he been sentenced after August 3, 2010, the effective date of the FSA, then he would ultimately have been entitled to a sentence of sixty (60) months in confinement instead of the one hundred twenty (120) months in confinement that was actually imposed. Whereas this is an attractive argument and whereas the defendant's underlying premise is correct – that had he been sentenced after August 3, 2010, the more lenient provisions of the FSA would ultimately have been applicable – the Court concludes that the defendant's contentions must nonetheless be rejected. Specifically, as discussed below, whereas a post-August 3, 2010 sentencing hearing may have entitled him to claim the benefit of the FSA, *see, e.g., Noto v. United States,* 2014 WL 549375, *4-5 (W.D. La. Feb. 11, 2014) (granting a re-sentencing under the FSA to a defendant whose sentencing took place after passage of the FSA), *United States v. Caston*, 2013 WL 3933400, *2 (E.D. La. July 30, 2013) (same); *United States v. Braziel*, 2012 WL 6202983, *2 (E.D. La. Dec. 12, 2012) (same) , the Court is unable to conclude that the failure of the defendant's attorneys to seek a continuance of the sentencing hearing amounted to deficient performance that entitles the defendant to relief in this case.

The defendant was indicted for the offense charged against him in March, 2009. In June, 2009, the defendant entered into a plea agreement with the Government. A sentencing hearing was originally scheduled for October 22, 2009, but was continued, without date, upon motion of the Government. *See* R. Docs. 18 and 22. The sentencing hearing was later re-scheduled for May 10, 2010, but was again continued, this time at the request of the defendant – because of "special family

9

issues" – and was re-scheduled for July 22, 2010. *See* R. Docs. 23-25. In the interim, the FSA had been proposed as new legislation in the United States Senate in January, 2010, and was approved by that body in March, 2010. At the time of the defendant's scheduled sentencing hearing, however, no action had been taken on this legislation in the House of Representatives, and there was no indication as to when or whether the House would approve the legislation or as to whether the legislation would be approved by the President. It is only with the clarity provided by hindsight that the Court now knows that the House would approve the legislation on July 28, 2010, six days after the defendant's sentencing hearing, and that the President would sign it into law several days later on August 3, 2010. It is this uncertainty that existed at the time of the defendant's sentencing, uncertainty regarding the date that the FSA would be passed, if at all, that leads to the conclusion that the defendant's attorneys did not provide deficient performance by failing to seek a continuance of the sentencing hearing.

The issue now argued by the defendant has been addressed in several instances by other courts, and this Court has not found any decisions that would inure to the benefit of the defendant in this case. See, for example, the situation presented in *Torres v. United States*, 2013 WL 1349126 (S.D. W.VA. April 1, 2013), where the defendant was sentenced on July 12, 2010, sixteen (16) days prior to the passage of the FSA by the House of Representatives, to a mandatory minimum sentence for crack cocaine. As in the instant case, the defendant appealed the imposition of the mandatory minimum sentence and argued that the FSA should be applied to his conviction and sentence. The Fourth Circuit Court affirmed the conviction and sentence, however, concluding that the FSA did not apply retroactively to the defendant's sentence. *See United States v. Torres*, 439 Fed. Appx. 241 (4th Cir.), *cert. denied*, 132 S.Ct. 599 (2011). In thereafter pursuing a § 2255 claim, the defendant

10

argued, as here, that his attorney had provided deficient performance by failing to request a continuance of the sentencing hearing. The Court rejected this contention, however, concluding that:

> In addressing the first prong of *Strickland*, the Court must determine whether Petitioner's counsel's representation fell below an objective standard of reasonableness by failing to request a continuance of Petitioner's sentencing until after enactment of the FSA. As the magistrate judge correctly observed, it is well-settled that an attorney is not constitutionally deficient for failing to anticipate a change in the law. *United States v. McNamara*, 74 F.3d 514, 516-17 (4th Cir. 1996) (*citing Kornahrns v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995)); *see also Ballard v. United States*, 400 F.3d 404, 408 (6th Cir. 2005). Although the bill was passed by the Senate on March 17, 2010, it was not approved by the House of Representatives until July 28, 2010 – 16 days after Petitioner's sentencing. Petitioner nonetheless argues that his counsel should have been aware of the pending legislation because of alerts sent out by organizations .... As the cases cited above demonstrate, however, an attorney is not required to constantly monitor the activities of Congress for proposed or pending legislation that may bear on a client's case. Consequently, Petitioner cannot satisfy the first prong of the *Strickland* test.

*Torres v. United States, supra,* 2013 WL 1349126 at *3. *See also Becerra v. United States*, 2013 WL 2285350, 6 (E.D. N.C. May 23, 2013) (rejecting a defendant's claim of ineffective assistance for failure to seek a continuance where the defendant's sentencing hearing was conducted on July 8, 2010, twenty (20) days prior to passage of the FSA, noting that "[f]ailure to anticipate a change in the law is not ineffective assistance of counsel" and that, when the defendant was sentenced, "the House had not yet passed the FSA, and there was no guarantee if or when the FSA would become law. Therefore, [counsel's] failure to seek a continuance pending passage of the bill was not objectively unreasonable"); *United States v. Jeanpierre*, 2012 WL 4898182, *2 (D.Minn. Oct. 16, 2012) (rejecting a defendant's claim of ineffective assistance for failure to seek a continuance where the defendant's sentencing hearing was conducted in April, 2010, four (4) months prior to the passage of the FSA, and noting that "counsel could not have known when or even if the House would pass the FSA or when the FSA would have become effective ... [and] counsel's failure to ask for an indefinite continuance until the potential passage of a law does not constituted [sic] ineffective

assistance"); *Logan v. United States*, 2011 WL 1656025, *5 (D.Md. April 28, 2011) (same, where the defendant was sentenced on July 7, 2010, twenty (20) days before passage of the Act by the House); *United States v. Musallet*, 2011 WL 1303305, *2-3 (D.Kan. April 1, 2011) (same, rejecting a claim of ineffective assistance where the defendant's counsel failed to request a continuance of the sentencing hearing, scheduled in January, 2010, notwithstanding that counsel was aware of the pending legislation, because counsel "had no way of knowing when it might be passed," and there was little reason to believe that a request for an indefinite continuance would be granted).

Based on the reasoning utilized in the above-cited cases, which the Court finds to be persuasive, the Court concludes that the defendant in this case is unable to establish that the conduct of his attorneys was deficient. There is nothing in the record to suggest that on the date of the defendant's sentencing hearing, the FSA, which had been pending without action for more than four (4) months after passage by the Senate, would be enacted into law at any particular time. Nor is there anything in the record to suggest that a request for a continuance of an indefinite duration, to await passage of the FSA, would have been entertained or granted by this Court. Accordingly, the Court finds that the actions of the defendant's attorneys were not objectively unreasonable and that the defendant's claim in this regard must be rejected.

The Defendant's Claim Regarding His Attorneys'
Failure To File A Rule 35(a) Motion Is Without Merit

The defendant next asserts that his trial attorneys provided ineffective assistance because they failed to file a motion to correct the sentence within the time allowed by Fed. R. Crim. P. 35(a). This Rule provides:

(a) **Correcting Clear Error**. Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.

12

&ast;   &ast;   &ast;   &ast;

(C) **"Sentencing Defined**. As used in this rule, "sentencing" means the oral announcement of the sentence.

The defendant's argument in this regard is that, considering that the House of Representatives passed the FSA and the President signed the FSA into law during the 14-day period allowed for him after sentencing to file a Rule 35(a) motion to correct the sentence, his attorneys had an opportunity to file a timely motion pursuant to this Rule, and such a motion would have resulted in a reduction in his sentence from 120 months to 60 months in confinement based upon the provisions of the FSA. The defendant's argument, however, is misplaced. Specifically, as discussed hereafter, there was no "arithmetical, technical, or other clear error" in the defendant's sentence for the court to correct, and such a motion would not have been successful.

After the passage of the FSA, the Fifth Circuit concluded that the provisions of the Act did not apply to criminal defendants whose wrongful conduct occurred before the passage of the legislation. *See United States v. Doggins*, 633 F.3d 379, 384 (5th Cir. 2011); *United States v. Tickles*, 661 F.3d 212, 215 (5th Cir. 2011). This was the prevalent view among the circuit courts and was based upon the General Savings Statute, 1 U.S.C. § 109, which provides that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty ... incurred under such statute unless the repealing Act shall so expressly provide." Accordingly, inasmuch as the FSA did not include an express provision as to the retroactivity of the FSA, the courts applied § 109 and concluded that the Act did not diminish the penalty for pre-Act wrongdoing. *See United States v. Lewis*, 625 F.3d 1224, 1228 (10th Cir. 2010); *United States v. Brewer*, 624 F.3d 900, 909 n.7 (8th Cir. 2010); *United States v. Bell*, 624 F.3d 803, 814-15 (7th Cir. 2010); *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010); *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010).

Notwithstanding, a conflict arose among the circuits regarding whether the FSA should apply to criminal defendants who were *sentenced* after the passage of the Act, notwithstanding that their wrongful conduct occurred before such passage. Thus, although the Fifth Circuit concluded that the provisions of the FSA did not apply to such defendants, *see United States v. Tickles*, *supra*, 661 F.3d at 215, and although this conclusion was also reached by several other circuits, there was not unanimity of opinion in this regard. *Compare United States v. Fisher*, 635 F.3d 336, 339-340 (concluding that the FSA did not apply to defendants whose wrongful conduct took place before passage of the Act and who were sentenced afterward), and *United States v. Sidney*, 648 F.3d 904, 906 (8ᵗʰ Cir. 2011) (same: "the timing of the sentence is immaterial, and ... the controlling factor is the date on which the crime was committed"), with *United States v. Douglas*, 644 F.3d 39, 4-44 (11ᵗʰ Cir. 2011) (concluding that the FSA did in fact apply to defendants whose wrongful conduct took place before passage of the Act but who were sentenced thereafter), and *United States v. Dixon*, 648 F.3d 195, 203 (3ʳᵈ Cir. 2011) (same). Accordingly, because of the conflict that existed in connection with this issue, the Supreme Court in 2012 stepped in and sided with the latter position, ruling that the FSA applies to all criminal defendants sentenced after the passage of the Act, regardless of when their criminal wrongdoing occurred. *See United States v. Dorsey*, ___ U.S. ___, 132 S.Ct. 2321, 2335 (2012). In effect, the *Dorsey* Court determined that, although there was no express provision in the FSA regarding retroactivity, the fair implication from the statute was that Congress intended the FSA to apply to defendants sentenced after the passage of the Act. *See id.* at p. 2335. This conclusion was arrived at, in part, because of the general sentencing principle that, when "determining the particular sentence to be imposed," courts are routinely instructed by the Sentencing Commission to determine a sentencing range based upon guidelines "'in effect on the

14

date that the defendant is sentenced,' regardless of when the defendant committed the offense." *Id.* at p. 2332. Thus, the *Dorsey* Court concluded that, in determining the application of the more lenient sentencing provisions of the FSA, the date of the defendant's sentencing was the determining factor, with the FSA being applicable to criminal defendants sentenced after August 3, 2010, the effective date of the statute.

Based on the foregoing, inasmuch as the defendant in this case was sentenced prior to August 3, 2010, it is clear that there was no error in fact in the imposition of the pre-FSA mandatory minimum sentence, much less "clear error" as envisioned by Fed. R. Crim. P. Rule 35(a). *See United States v. Henderson, 646 F.3d 223, 225* (5th Cir. 2011) (opining that the scope of clear error correctable under Rule 35(a) is "very narrow and ... extend[s] only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action" (internal quotation marks omitted)). To the contrary, because the defendant was sentenced prior to the effective date of the FSA, the FSA did not apply to him. Although the defendant seeks to rely upon *Dorsey* to argue otherwise, the *Dorsey* decision, which hinges the applicability of the FSA upon the date of sentencing, does not help him. To the contrary, the Fifth Circuit has consistently held, in reliance upon both *Dorsey* and *United States v. Doggins, supra*, that the FSA does not apply to criminal defendants who were sentenced prior to the effective date of the Act. *See, e.g., United States v. Blount*, 575 Fed. Appx. 496, 497 (5th Cir. 2014) (finding that "contrary to [the defendant's] assertion, the FSA has no applicability to him because he was sentenced before it took effect."); *United States v. Derrow*, 532 Fed. Appx. 574, 575 (5th Cir. 2013), *cert. denied*, __ U.S. ___, 134 S.Ct. 806 (2013) (same); *United States v. Brown*, 531 Fed. Appx. 474, 475 (5th Cir. 2013) (same); *United States v. Mason*, 519 Fed.

15

Appx. 257, 258 (5th Cir. 2013) (same); *United States v. Sneed*, 544 Fed. Appx. 296, 297 (5th Cir. 2013) (same); *United States v. Moore*, 514 Fed. Appx. 462, 463 (5th Cir. 2013) (same); *United States v. Reed*, 490 Fed. Appx. 633, 634 (5th Cir. 2012) (same). *See also Mosby v. United States*, 2012 WL 4058370 (E.D. Mo. Sept. 14, 2012) (concluding that the FSA did not apply to a defendant sentenced on July 26, 2010, eight (8) days prior to passage of the ACT). As a result, there was no "clear error" in the defendant's sentence that would have justified the filing of a Rule 35(a) motion, and an attorney's failure to undertake a futile action that has no chance of success does not amount to ineffective assistance of counsel. *Cf., Dunlap v. United States*, 2013 WL 1635591, *3 (D. S.C. April 16, 2013) (finding no ineffective assistance where the defendant's attorney failed to argue for the applicability of the FSA at a sentencing hearing because the FSA was not then applicable "and certainly his counsel could not have been ineffective for failing to raise this issue prior to the FSA"). *See also Escudero-Aponte v. United States*, 65 Fed. Appx. 333, 335-36 (1st Cir. 2003) (finding no ineffective assistance of counsel where there was little likelihood that the filing of a Rule 35(b) motion would have been successful). Accordingly, the defendant's contention regarding the failure to file a Rule 35(a) motion must be rejected.

### The Defendant's Claim Regarding The Denial Of Counsel At A Critical Stage Of The Proceedings Is Without Merit

Finally, the defendant asserts that, inasmuch as his attorneys were allowed to withdraw from representation on August 3, 2012, on which date he still had two days within which to file a timely Rule 35(a) motion and seek a reduction in his sentence under the FSA, he was effectively denied the benefit of counsel at a critical stage of his criminal proceedings. The Court's resolution of the defendant's immediately preceding claim, however, resolves this issue to his detriment.

16

"It is well settled that [the Sixth Amendment] means that a defendant is entitled to be represented by counsel at all critical stages of a criminal proceeding against him; critical stages of a criminal proceeding are those stages of the proceeding at which the substantial rights of a defendant may be affected." *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991) (citations omitted). In determining whether the presence of counsel is required at a particular stage, the courts focus on whether there has been a "denial of such significance that it makes the adversary process itself unreliable." *United States v. Russell*, 205 F.3d 768, 771 (5th Cir. 2000), *citing United States v. Cronic*, 466 U.S. 648, 658 (1984). A critical stage of a criminal proceeding is a stage at which "the accused require[s] aid in coping with legal problems or assistance in meeting his adversary, and the substantial rights of the accused may be affected." *McAfee v. Thaler*, 630 F.3d 383, 391 (5th Cir. 2001) (citation and internal quotation marks omitted). *See also United States v. Robles*, 445 Fed. Appx. 771, 780-81 (5th Cir. 2011).

In the instant case, the defendant was represented by retained counsel through the date of his July 22, 2010, sentencing hearing. The defendant thereafter filed a *pro se* notice of appeal on July 28, 2010, preserving his right to appeal the conviction and sentence. Upon the entry of Judgment on July 30, 2010, his attorneys moved to withdraw from representation, and that motion was granted on August 3, 2010. On that date, although the defendant had two days remaining during which the Court retained jurisdiction to correct a clear error in his sentence pursuant to Rule 35(a), *see, e.g., United States v. Coe,* 482 Fed. Appx. 957 (5th cir. 2012) (noting that the 14-day period provided by Rule 35(a) after sentencing is "jurisdictional and strictly construed"), and although the defendant asserts that he was denied the representation of counsel during this "critical stage" of the proceedings, the Court does not agree. As previously discussed, the filing of a Rule 35(a) motion

17

during the referenced two-day period would not have been successful because there was no "clear error" in the sentence for the Court to correct and therefore no prejudice resulting to the defendant from the failure to file. *See United States v. Richardson*, 2012 WL 1279929, *5 (N.D. Ill. April 16, 2012) (finding no denial of counsel at a critical stage of the proceedings where the defendant's attorney moved to withdraw from representation three (3) days before the deadline for filing post-trial motions). Moreover, no substantial rights of the defendant were affected during this two-day interval because the defendant retained his right to assert on appeal, through appointed counsel, that the FSA should have been applied to his sentence. Accordingly, the defendant was not denied the benefit of counsel during any critical stage of his criminal proceedings, and this claim, as well, must be rejected.

## Certificate Of Appealability

The Court has also considered whether to grant a certificate of appealability in this case in the event that the defendant seeks to pursue an appeal of the Court's Ruling. Pursuant to 28 U.S.C. § 2253(c), a certificate of appealability may not be granted unless there is "a substantial showing of the denial of a constitutional right." This standard is satisfied only upon a showing that reasonable jurists would find that the resolution of the constitutional claims by the Court is debatable or wrong. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court concludes that the governing standard is no satisfied in this case. Accordingly, the Court will deny a certificate of appealability. Having found against the defendant as set forth above, it is clear that what occurred in this case should be remedied in favor of the defendant. However, it is up to the Congress to make such a correction in this matter. This court is bound by the statute as written before the amendment however compelling the defendant's equitable argument is. This court

reiterates that given the opportunity under the law, I would not have imposed the mandatory sentence of ten years.

**IT IS ORDERED** that the defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (R. Doc. 48), be **DENIED**. Judgment shall be entered accordingly.

**IT IS FURTHER ORDERED** that, in the event that the defendant seeks to appeal the Court's Ruling, a Certificate of Appealability is hereby **DENIED**.

Baton Rouge, Louisiana, this _____ day of September, 2015.

_____
**JAMES J. BRADY**
**UNITED STATES DISTRICT JUDGE**

19